155 P.3d 695

**Carolyn M. FINHOLT, Plaintiff–Appellant,**

and

**David N. Finholt, Plaintiff,**

v.

**Jason CRESTO, formerly doing business as Fairway Lawns, LLC., Defendant–Respondent,**

and

**Does II through V, inclusive, Michael D. Sawyer, MSP Enterprises, Inc. dba Mike's Sand & Gravel, Jacob G. Albrethsen, Defendants.**

No. 32448.

Supreme Court of Idaho, Boise, December 2006 Term.

Feb. 21, 2007.

Troupis Law Office, Eagle, for appellant. Christ T. Troupis argued.

Anderson, Julian & Hull LLP, Boise, for respondent. Phillip J. Collaer argued.

TROUT, Justice.

Carolyn Finholt (Finholt) appeals from the district court's grant of summary judgment to defendant Jason Cresto (Cresto), formerly doing business as Fairway Lawns, LLC (Fairway), in Finholt's action for damages arising from an automobile collision.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Finholt suffered permanent injuries in a car accident that took place on August 5, 2002, at the intersection of Chinden Boulevard and Locust Grove Road in Boise. Finholt was sitting in a car at the intersection on Chinden, preparing to make a left turn southbound onto Locust Grove. A dump truck heading east on Chinden approached the intersection. At the same time, Jacob

Albrethsen (Albrethsen) was driving a pickup heading north on Locust Grove. Both the dump truck and Albrethsen's pickup entered the intersection. The dump truck clipped the back of the pickup and then veered into the left turn lane, hitting the Finholt car head-on and injuring Finholt.

At the time of the collision, Albrethsen worked as an outside salesman preparing lawn service estimates for Fairway, then owned by Cresto. Albrethsen worked a split-shift of mornings and early evenings for Fairway. Fairway required that Albrethsen provide his own vehicle, and the company reimbursed him for the cost of traveling to job sites. He arrived at the Fairway office between 8:00 A.M. and 9:00 A.M. to pick up a list of locations requiring estimates and typically left to perform the estimates by 9:30 A.M. Fairway attempted to group the estimates assigned to Albrethsen for a given day in close proximity to one another so he wouldn't be driving all over the Treasure Valley, and he typically performed 10–30 estimates in a day. Albrethsen was not required to return immediately to the office after completing the estimates and was free to spend his afternoons however he chose. He was required to return to the Fairway office around 4:45 P.M. to perform follow-up telephone calls on the jobs he had estimated that morning. On the day of the accident, Albrethsen spent the morning traveling to homes in West Boise to complete lawn service estimates for Fairway. Albrethsen testified that the last home for which he performed an estimate that morning was located approximately one mile south of Chinden in a neighborhood off Locust Grove. He further testified that he was on his way to meet his girlfriend for lunch in downtown Boise when the accident occurred.

Finholt filed a complaint for damages against Albrethsen and other defendants, and later added Fairway and Cresto as defendants. Cresto moved for summary judgment, arguing that Albrethsen was not within the course and scope of his employment at the time of the accident. Initially, the district court denied the motion because it appeared some inferences could be drawn to raise a genuine issue of material fact about

whether Albrethsen was still working at the time of the collision. In particular, the judge noted a potential inconsistency between Albrethsen's direction of travel north on Locust Grove, which dead-ends across Chinden in the Banbury subdivision, and his testimony that he was planning to get onto State Street to head toward downtown Boise to meet his girlfriend for lunch. A second deposition was then taken of Albrethsen, in which he testified that at the time of the accident he had completed his assignments and was headed north on Locust Grove under the mistaken belief that the road intersected with State Street. The judge concluded that this was a sufficient uncontroverted explanation for his direction of travel at the time of the accident. The judge found that even the circumstantial evidence in the case was not sufficient to create a genuine issue of material fact and therefore, granted summary judgment to Cresto. Finholt now appeals.

## II.

### STANDARD OF REVIEW

This Court's review of the district court's ruling on a motion for summary judgment is the same as that required of the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994). Summary judgment is appropriate when "the pleadings, depositions, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). We construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005). If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. *Id.* However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact

exists to withstand summary judgment. *Id.* A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. *Id.*

## III.

## DISCUSSION

 Finholt bases her claim against Cresto on the doctrine of respondeat superior, under which an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment. *See Clement v. Farmers Ins. Exchange*, 115 Idaho 298, 302, 766 P.2d 768, 772 (1988). Generally, work performed to serve the employer falls within the course and scope of employment, whereas actions pursued for a purely personal purpose do not. *Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 184, 983 P.2d 834, 838 (1999). Finholt argues there are genuine issues of material fact remaining as to whether Albrethsen was within the course and scope of his employment at the time of the accident. She contends he had not completed his final work assignment or that he fell under a "special errand" or "traveling employee" exception.

### A. Final work assignment

Albrethsen's testimony was that at the time of the accident, he had completed his final assignment, was off work until approximately 4:45 P.M. that afternoon, and was on his way to downtown Boise to meet his girlfriend for lunch. He explained in his second deposition that the reason he was continuing north on Locust Grove across Chinden, rather than turning right onto Chinden, was because he mistakenly believed that Locust Grove would go through to State Street, which he planned to take directly into downtown Boise to his lunch stop. Finholt, on the other hand, argues there are three pieces of circumstantial evidence which are enough to create a genuine issue of fact about whether Albrethsen was truly off work.

First, Finholt points to Albrethsen's direction of travel (to the north), which she argues demonstrates that Albrethsen was not really on his way to downtown Boise (to the

east). Second, she refers to Cresto's testimony that Fairway had customers "pretty much all over" and while he didn't know whether there were any customers in the Banbury subdivision, he assumed there probably were some. From this, Finholt asserts there is sufficient circumstantial evidence to create an issue of fact about whether Albrethsen had completed his final assignment at the time of the accident, or was on his way to Banbury to do another estimate. Finally, Finholt points out that any books and records in Fairway's possession which might have substantiated Albrethsen's assignment the day of the accident, were lost, destroyed or given to the company that bought Fairway several months after the accident.

 Circumstantial evidence can create a genuine issue of material fact. *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986). However, while reasonable inferences must be drawn in favor of the non-moving party, the non-moving party cannot rest upon mere speculation. *Crea v. FMC Corp.*, 135 Idaho 175, 179, 16 P.3d 272, 276 (2000). Finholt has raised only speculation about whether Albrethsen might actually have still been engaged in his work preparing lawn service estimates and whether he was actually on his way back to work.

The judge accepted Albrethsen's testimony about where he was headed, not because the judge weighed its credibility, but because it was uncontroverted. Speculating about whether there might have been new potential customers in the Banbury subdivision, or what Fairway's records might have shown, are just that—speculation—and are not sufficient to create a genuine issue of fact. The district court was correct in concluding there was no genuine issue of material fact as to whether Albrethsen had finished working and was off duty, engaged in his own personal pursuits, at the time of the collision.

### B. Special errand or traveling employee theories

Finholt argues that even if Albrethsen was not specifically engaged in a work assignment at the moment of the accident, nevertheless, by the very nature of his work, he

was either engaged in a special errand or was a traveling employee. Finholt refers to these theories interchangeably, and in conjunction with other theories such as "roving commission," which this Court has never adopted. In any event, Finholt suggests the Court should broadly interpret course and scope of employment to include Albrethsen's lunch within his work time. Under Idaho law, the special errand and traveling employee theories are distinct, and neither applies to this case.

■■■■ Cases in Idaho have articulated the "coming and going" rule, which states that an employee is not within the course and scope of his employment on his way to and from work. *Ridgway v. Combined Ins. Companies of America,* 98 Idaho 410, 411, 565 P.2d 1367, 1368 (1977). Typically these cases have arisen in the worker's compensation area rather than in the context of a civil action. In *Bocock v. State Bd. of Educ.,* 55 Idaho 18, 37 P.2d 232 (1934), this Court found an exception from the coming and going rule for an employee who, "although not at his regular place of employment, even before or after customary working hours, is doing, is on his way home from performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer." *Id.* at 22, 37 P.2d at 234, quoting *Scrivner v. Franklin Sch. Dist. No. 2,* 50 Idaho 77, 80, 293 P. 666, 667 (1930). The special errand exception is premised on the idea that an employee leaving his normal place of work to perform a special job for an employer is, nevertheless, still performing part of his normal job. There is no evidence in the record that Albrethsen was engaged in some special errand on behalf of Fairway; in fact, Albrethsen affirmatively testified that he was not headed to perform any task for Fairway and was instead off work at the time of the collision. The special errand theory is not applicable to the facts of this case.

Separately, this Court has defined an exception to the coming and going rule for traveling employees. In *Cheung v. Wasatch Electric,* 136 Idaho 895, 42 P.3d 688 (2002), we explained that "[w]hen an employee's work requires him to travel away from the employer's place of business or his normal place of work, the employee is covered by worker's compensation. This is known as the "traveling employee" rule...." *Id.* at 897, 42 P.3d at 690, citing *Ridgway v. Combined Ins. Cos. Of America,* 98 Idaho 410, 411–12, 565 P.2d 1367, 1368–69 (1977). This Court has not applied the traveling employee theory outside the worker's compensation context where it expands employer liability. Regardless, we need not reach the question of whether to apply the traveling employee exception to tort claims, because the theory would not apply to the facts presented by this case.

The traveling employee exception applies to "[e]mployees whose work entails travel away from the employer's premises" and are required "to maintain [themselves] while traveling," giving rise to an employer's coverage of the employee while on the trip. *Ridgway,* 98 Idaho at 412, 565 P.2d at 1369. In *Ridgway,* an Idaho employee was sent to Salt Lake City, Utah, for a two-week training seminar, and during the trip was injured while en route to pick up lunch. The Industrial Commission found the relationship between the business trip and the injury too tenuous to hold the employer liable, but the Court reversed and remanded, directing the Commission to analyze the facts under the traveling employee exception. *Id.* Certainly, travel need not always be as significant as the two-week business trip in *Ridgway* to trigger the traveling employee exception. *See Cheung,* 136 Idaho at 898, 42 P.3d at 691. However, in this case, Albrethsen was working within the Boise area on the day of the collision, venturing only as far as Eagle and Meridian. He completed his last assignment before the collision occurred, and at the time immediately preceding the collision was traveling across town to a personal lunch. Even if this Court were to analyze this case under the traveling employee theory, Albrethsen's travel within the Boise area would not trigger extended coverage for his travel to a personal engagement.

## IV.

## CONCLUSION

Because Finholt did not demonstrate any genuine issues of material fact in response to

Cresto's motion for summary judgment, the district court's order granting summary judgment in favor of Jason Cresto is affirmed. We award costs on appeal to Respondent.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.