**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**DOCKET NO. 42999**

| | | |
|---|---|---|
| **RICHARD THOMAS WRIGHT,** | ) | |
| | ) | |
| **Plaintiff-Appellant-Cross Respondent,** | ) | **Boise, April 2016 Term** |
| | ) | |
| **v.** | ) | **2016 Opinion No. 74** |
| | ) | |
| **ADA COUNTY, a political subdivision of the** | ) | **Filed: July 7, 2016** |
| **State of Idaho, and ADA COUNTY BOARD** | ) | |
| **OF COUNTY COMMISSIONERS,** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **Defendants-Respondents-** | ) | |
| **Cross Appellants.** | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. George D. Carey, Senior District Judge.

District court order granting summary judgment on FMLA claim and Whistleblower claim, <u>affirmed</u> in part, <u>vacated</u> in part and <u>remanded.</u>

Rossman Law Group, Boise, for appellant. Eric S. Rossman argued.

Naylor & Hales, Boise, for respondents. Kirtlan G. Naylor argued.

---

BURDICK, Justice

This case comes to the Idaho Supreme Court on appeal from an Ada County district court's decision granting summary judgment to Ada County on Richard Thomas Wright's employment-related claims. After Wright was terminated from his employment with Ada County, he filed suit alleging, among other claims, that he was terminated in violation of the the Idaho Protection of Public Employees Act (hereinafter, the Whistleblower Act) and the Family Medical Leave Act (FMLA). Wright subsequently amended his complaint to include negligent and intentional infliction of emotional distress claims. Ada County moved the district court for summary judgment on all claims, which the district court granted. Wright then appealed to this Court. We affirm in part, vacate in part, and remand to the district court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Richard Wright was hired in 2006 by Ada County as the Public Information Officer. In 2008, Wright became the Director of Administrative Services, a position he held until 2009 when

it was reclassified to Director of the Department of Administration in Ada County. That reclassification was the result of the Administrative Services being reorganized into the Department of Administration.

On January 15, 2013, Wright's employment was terminated with Ada County. Wright's termination letter stated that his position was being eliminated due to a reorganization of the Department of Administration. At the time of his termination, Wright had two applications for leave under the FMLA pending. Wright had requested leave on January 2, 2013, but apparently Human Resources did not receive his health care provider's certification until January 15, 2013. The Commissioners allegedly did not become aware of Wright's FMLA requests until January 18, 2013, which was three days after Wright was terminated. However, the Commissioners extended Wright's salary and benefits to coincide with what would have been the end of Wright's requested FMLA leave, which was the end of February, 2013.

On February 12, 2013, Wright filed a complaint alleging he was terminated in violation of the Whistleblower Act and the FMLA. On July 2, 2014, Wright amended his complaint to include a claim for negligent and/or intentional infliction of emotional distress. Wright alleged that he was terminated in retaliation for the investigation he ordered into an employee who had been accused of workplace harassment. Alternatively, Wright alleged he was terminated in retaliation for his investigation into hostile work environment claims received from another Ada County employee.

On October 10, 2014, Ada County filed a motion for summary judgment, together with a statement of undisputed material facts, a memorandum, and various transcripts and exhibits in support of its motion.

On January 5, 2015, the district court granted Ada County's motion for summary judgment. On Wright's whistleblower claim, the district court ruled that Wright failed to show he engaged in a predicate act protected under the Whistleblower Act. Specifically, the district court ruled that the investigations Wright ordered did not involve violations of a law, rule, or regulation, but rather a violation of county employee policies. The court further ruled that Wright did not participate in or give information in any meaningful manner with respect to any of the investigations and therefore was not protected under the investigation prong of the statute. With respect to Wright's FMLA claim, the district court ruled that there was no evidence of any interference with, or causal connection between, Wright's request for FMLA benefits and the

decision to discharge him. The court reasoned that the undisputed evidence indicated that the decision to terminate Wright and Wright's request for FMLA leave were two unrelated events. Finally, the district court ruled that there was no genuine issue of fact supporting either an intentional or a negligent infliction of emotional distress claim. First, there was no evidence that Ada County's behavior was extreme or outrageous and beyond all possible bounds of decency. Second, there was no evidence of a breach of a duty that Ada County owed to Wright as an at-will employee.

On January 16, 2015, Ada County filed its memorandum of costs and attorney fees. That same day, Wright filed a motion for reconsideration of the district court's dismissal of Wright's whistleblower claim.

On February 17, 2015, the district court issued a memorandum and order denying Wright's motion for reconsideration and denying Ada County's request for attorney fees.

Wright timely appealed to this Court on February 19, 2015. Ada County filed a cross-appeal on March 4, 2015.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it granted summary judgment to Ada County on Wright's Whistleblower claim.
2. Whether the district court erred when it granted summary judgment to Ada County on Wright's FMLA claim.
3. Whether the district court erred when it granted summary judgment to Ada County on Wright's negligent infliction of emotional distress claim.
4. Whether the district court abused its discretion when it denied Ada County's request for attorney fees.
5. Whether either party is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

This Court reviews the grant of a summary judgment motion under the same standard the district court used in ruling on the motion. *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). That is, summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. *Finholt v. Cresto*, 143 Idaho 894, 896, 155 P.3d 695, 697 (2007).

3

This Court must construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor. *Id.* If reasonable people could reach different conclusions or inferences from the evidence, the motion must be denied. *Id.* However, the nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. *Id.* at 896–97, 155 P.3d at 697–98. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. *Id.* at 897, 155 P.3d at 698. Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 87, 996 P.2d 303, 306 (2000).

Additionally, this Court exercises free review over questions of law. *Buckskin Properties, Inc. v. Valley Cnty.*, 154 Idaho 486, 490, 300 P.3d 18, 22 (2013).

## IV.    ANALYSIS

Wright asserts that the district court made several errors. First, Wright argues that the district court erred when it ruled that Wright did not participate in an investigation for purposes of the Whistleblower Act. Second, Wright argues the district court erred when it concluded that Wright's FMLA claim failed on the basis that Ada County was not aware of his request for FMLA leave when it terminated Wright's employment. Finally, Wright argues that the district court erred when it granted Ada County summary judgment on his negligent infliction of emotional distress claim. In its cross-appeal, Ada County argues that the district court erred when it denied Ada County's request for attorney fees. Both parties seek attorney fees on appeal. We address each issue in turn below.

### A. The district court erred when it granted summary judgment to Ada County on Wright's Whistleblower claim.

Idaho's Whistleblower Act, which was enacted in 1994, seeks to "protect the integrity of government by providing a legal cause of action for public employees who experience adverse action from their employer as a result of reporting waste and violations of a law, rule or regulation." I.C. § 6-2101; *Van*, 147 Idaho at 557, 212 P.3d at 987 (quoting *Mallonee v. State*, 139 Idaho 615, 619, 84 P.3d 551, 555 (2004)). To prevail in an action under the Whistleblower Act, an employee is required to establish by a preponderance of the evidence "that the employee has suffered an adverse action because the employee . . . engaged or intended to engage in an

4

activity protected under section 6-2104, Idaho Code." I.C. § 6-2105(4). Idaho Code section 6-2104 in turn provides, in relevant part, that:

> (1)(a) An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States. Such communication shall be made at a time and in a manner which gives the employer reasonable opportunity to correct the waste or violation.
>
> > (b) For purposes of subsection (1)(a) of this section, an employee communicates in good faith if there is a reasonable basis in fact for the communication. Good faith is lacking where the employee knew or reasonably ought to have known that the report is malicious, false or frivolous.
>
> (2) An employer may not take adverse action against an employee because an employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review.
>
> (3) An employer may not take adverse action against an employee because the employee has objected to or refused to carry out a directive that the employee reasonably believes violates a law or a rule or regulation adopted under the authority of the laws of this state, political subdivision of this state or the United States.
>
> (4) An employer may not implement rules or policies that unreasonably restrict an employee's ability to document the existence of any waste of public funds, property or manpower, or a violation, or suspected violation of any laws, rules or regulations.

I.C. § 6-2104. The term "adverse action" includes the discharge of a public employee. I.C. § 6-2103(1). To present a *prima facie* case for retaliatory discharge under the Whistleblower Act, the plaintiff must show: (1) he was an 'employee' who engaged or intended to engage in protected activity; (2) his 'employer' took adverse action against him; and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Van*, 147 Idaho at 558, 212 P.3d at 988. Here, elements two and three are not in dispute. Rather, the parties disagree as to whether Wright engaged, or intended to engage, in a protected activity.

Wright asserts that Ada County terminated his employment because he engaged in a protected activity under Idaho Code section 6-2104(2). That is, Wright argues he was terminated for participating in an investigation under Idaho Code section 6-2104(2). Wright urges this Court to interpret "investigation" broadly to include any investigation even if that investigation was not initiated for the purpose of discovering waste or a violation of law, rule, or regulation. Ada

5

County urges this Court to follow legislative intent of the Whistleblower Act as stated in Idaho Code section 6-2101 to conclude that investigations under Idaho Code section 6-2104(2) must relate to waste or a violation of law, rule or regulation. Ada County argues that Wright's investigation was not into waste or a violation of law, rule or regulation and therefore, the Whistleblower Act does not apply here. Thus, the issue here is the proper scope of investigations that are covered under Idaho Code section 6-2104(2). That is, whether Idaho Code section 6-2104(2) protects employees who participate in *any* investigation, or whether the investigation must relate to waste or a violation of law, rule or regulation.

As a preliminary matter, there is sufficient evidence in the record to show that Wright participated in an investigation. The Whistleblower Act does not define "participate," but Webster's Third New International Dictionary defines it as "to take part in something," which connotes that it involves being engaged in the investigation. *Webster's Third New International Dictionary*, 1646 (2002). Thus, the plain meaning of the word "participate" indicates that a person may participate in an investigation in more ways than just conducting the investigation. So long as an individual took part in the investigation or played an active role in it, that individual "participated" in the investigation for purposes of the Whistleblower Act.

Here, the record reflects that Wright took part in the investigations into harassment by county employees. Wright was the one who initiated the investigations by hiring a third-party investigator, and he also provided information to the investigator throughout the investigations. Wright also participated in investigation progress meetings with the Human Resource representative and the investigator, wherein Wright provided additional information and documentation to the investigator. The investigative reports reference Wright's involvement and active participation in the investigations. Thus, the record clearly establishes that Wright participated and gave information in an investigation for purposes of Idaho Code section 6-2104(2). That conclusion does not end our inquiry, however. Ada County asserts that Wright's participation in the investigation is not covered under the Whistleblower Act because the investigation was not into waste or a violation of law, rule, or regulation. We therefore must determine the proper scope of investigations that are covered under Idaho Code section 6-2104(2). That is, whether Idaho Code section 6-2104(2) protects employees who participate in *any* investigation, or whether the investigation must relate to waste or a violation of law, rule, or regulation.

The interpretation of a statute "must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written." *State v. Schwartz*, 139 Idaho 360, 362, 79 P.3d 719, 721 (2003) (citations omitted). "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *City of Sun Valley v. Sun Valley Co.*, 123 Idaho 665, 667, 851 P.2d 961, 963 (1993). Furthermore, this Court has held that "[t]he asserted purpose for enacting the legislation cannot modify its plain meaning. The scope of the legislation can be broader than the primary purpose for enacting it." *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 892–93, 265 P.3d 502, 505–06 (2011) (quoting *Viking Constr., Inc. v. Hayden Lake Irr. Dist.*, 149 Idaho 187, 191–92, 233 P.3d 118, 122–23 (2010)). "If the statute as written is socially or otherwise unsound, the power to correct it is legislative, not judicial." *Id.* (quoting *In re Estate of Miller*, 143 Idaho 565, 567, 149 P.3d 840, 842 (2006)).

The plain language of Idaho Code section 6-2104(2) states that "[a]n employer may not take adverse action against an employee because an employee participates or gives information in an investigation, hearing, court proceeding, legislative or other inquiry, or other form of administrative review." There is nothing in that subsection that requires the investigation to relate to waste or a violation of law, rule, or regulation. This is significant when the subsections surrounding Idaho Code section 6-2104(2) are taken into account. Indeed, while Idaho Code sections 6-2104(1), 6-2104(3), and 6-2104(4) explicitly mention "waste or a violation of law, rule or regulation," no such language is contained in subsection (2). Thus, although the purpose of the Whistleblower Act is to protect the integrity of government by providing a cause of action for public employees who experience adverse employment action as a result of reporting waste and violations of a law, rule or regulation, there is nothing in Idaho Code section 6-2104(2) that requires investigations to be into waste or violations of a law, rule or regulation. The fact that the "waste and violations of law, rule or regulation" language was left out of subsection (2) suggests that the Legislature intended the protections afforded under that subsection to be more broad than those offered under the other subsections of Idaho Code section 6-2104.

This Court has been reluctant to second-guess the wisdom of a statute and has been unwilling to insert words into a statute that the Court believes the legislature left out, be it

7

intentionally or inadvertently. *See Boise Street Car Co. v. Ada Cnty.*, 50 Idaho 304, 308–09, 296 P. 1019, 1020 (1931) (declining to read the words "and less than five thousand pounds," that were claimed to have been inadvertently omitted from a provision fixing license fees for motor vehicles "weighing more than two thousand pounds"); *see also Manary v. Anderson*, 292 P.3d 96, 103 (Wash. 2013) ("Where the legislature omits language from a statute, intentionally or inadvertently, the Supreme Court will not read into the statute the language that it believes was omitted."); *Estate of Bell v. Commissioner*, 928 F.2d 901, 904 (9th Cir.1991) ("Congress is presumed to act intentionally and purposely when it includes language in one section but omits it in another."). Indeed, as this Court stated in *Berry v. Koehler*, 84 Idaho 170, 177, 369 P.2d 1010, 1013 (1962), "[t]he wisdom, justice, policy, or expediency of a statute are questions for the legislature alone." Interpreting subsection (2) to require an investigation to be into waste or a violation of law, rule or regulation would essentially constitute revising the statute to add the "waste and violations of a law, rule or regulation" language that was omitted from that subsection, albeit possibly inadvertently. This Court has recognized that it does not have the authority to do so, as the legislative power is vested in the senate and house of representatives, Idaho Const. art. III, § 1, not in this Court. *Verska,* 151 Idaho at 895, 265 P.3d at 508.

Furthermore, although this Court has not addressed the issue of whether an investigation must relate to waste or a violation of law, rule or regulation, this Court has interpreted the term investigation broadly. In *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 400, 224 P.3d 458, 467 (2008), this Court stated:

> The word "investigate" is not defined in the statute. Therefore, we must give it its plain meaning. An ordinary dictionary defines "investigate" as follows: "to track . . . to observe or study by close examination and systematic inquiry . . . to make a systematic examination; *esp* **:** to conduct an official inquiry." Merriam Webster's Collegiate Dictionary 616 (10th ed.1993) (emphasis added). The legal dictionary of first resort defines the word as follows: "to follow up step by step by patient inquiry or observation . . . to examine and inquire into with care and accuracy; to find out by careful inquisition; examination. . . ." Black's Law Dictionary 740 (5th ed.1979). Although the word "investigation" may be narrowly defined as an official inquiry, we conclude that the plain meaning of the word is broader and encompasses actions involving close examination or observation. In view of the evidence that Curlee's note-taking was the product of her superiors' direction to "document" her allegations of waste, we conclude that there is a genuine issue of material fact as to whether she intended to give information in an investigation.

8

Although the investigation in *Curlee* was into alleged waste, there is nothing in this Court's opinion that suggests investigations should be limited to those relating to suspected waste or a violation of law, rule, or regulation. Thus, because the plain language of subsection (2) omits the words "waste or a violation of law, rule or regulation," and because this Court has interpreted "investigation" broadly, we hold that an investigation for purposes of Idaho's Whistleblower Act encompasses any investigation that involves close examination or observation. This is particularly true where, as here, the investigation leads to uncovering waste even though the original purpose of the investigation was into something other than waste or a violation of law, rule, or regulation. If no protection were afforded to public employees who participate in official inquiries into subject matter that is unrelated to waste or a violation of law, rule, or regulation, but which subsequently uncover such waste or violations of law, rule, or regulation, the purpose of the Whistleblower Act would be wholly defeated.

In summary, we hold that Wright participated in an investigation for purposes of Idaho Code section 6-2104(2). It is immaterial that the investigation was not officially initiated for the purpose of uncovering waste or a violation of law, rule, or regulation. Rather, it was sufficient that Wright participated in an official investigation as part of his responsibilities as the Director of the Department of Administration. Consequently, the district court erred in granting summary judgment to Ada County on Wright's Whistleblower claim.

## B. The district court did not err when it granted summary judgment to Ada County on Wright's FMLA claim.

Wright also argues that the district court erred when it granted summary judgment to Ada County on his FMLA claim. Specifically, Wright argues that the district court erred in concluding that because the commissioners were unaware of his FMLA request at the time Wright's employment was terminated, it could not be said that they interfered with his right to FMLA leave. Ada County asserts that the district court correctly granted summary judgment on the FMLA claim because there was no evidence Ada County interfered with Wright's leave and in fact, Ada County accommodated his FMLA leave by extending his termination date by one month.

An interference claim under the FMLA is based on an alleged violation of 29 U.S.C. section 2615(a)(1), which states, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" the substantive rights guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1); *Sanders v. City of Newport*, 657 F.3d 772, 777-78 (9th Cir.

2011) ("When a party alleges a violation of § 2615(a)(1), it is known as an 'interference' or 'entitlement' claim.") (citations omitted).

"To make out a prima facie case of FMLA interference, an employee must establish that '(1) he was eligible for the FMLAs protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.' " *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders*, 657 F.3d at 778).

Congress has authorized the Department of Labor ("DOL") to issue implementing regulations for the FMLA. 29 U.S.C. § 2654. These regulations are entitled to deference under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 n. 9 (9th Cir. 2001). DOL regulations state that "[t]he FMLA prohibits interference with an employee's rights under the law." 29 C.F.R. § 825.220(a). Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. 29 C.F.R. § 825.220(b). The DOL interprets "interference" to include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id.* The regulations further state that interference "would also include manipulation by a covered employer to avoid responsibilities under FMLA." *Id.* The regulations list as examples "(1) Transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50–employee threshold for employee eligibility under the Act; (2) Changing the essential functions of the job in order to preclude the taking of leave; (3) Reducing hours available to work in order to avoid employee eligibility." *Id.*

Finally, the regulations provide:

> (c) The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. . . . By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies.

29 C.F.R. § 825.220(c).

"In interference claims, the employer's intent is irrelevant to a determination of liability." *Sanders*, 657 F.3d at 778; *see also Smith*, 298 F.3d at 960 ("If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of

10

this right is a violation regardless of the employer's intent."). However, the FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Liston v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009).

The district court concluded that there was no evidence that the decision to discharge Wright interfered with Wright's FMLA request or that Wright was retaliated against for his FMLA request. The court noted that the decision to discharge Wright was made before the commissioners knew of his FMLA request, and that once they knew of the request, they accommodated it by extending Wright's date of termination. Consequently, the court ruled that "there was no evidence of any interference with or causal connection between Mr. Wright's request for an FMLA benefit and the decision to discharge him. The decision to terminate and the request for FMLA leave may have been close in time, but the undisputed evidence shows that they were unrelated."

Wright argues that the district court erred in granting the motion for summary judgment on his FMLA claim because the law regarding interference claims establishes that the employer's intent, good faith, and lack of knowledge are irrelevant. To support this argument, Wright cites to the Ninth Circuit's decision in *Sanders*, which provides that "[i]n interference claims, the employer's intent is irrelevant to a determination of liability. 657 F.3d at 778. Wright argues that "[u]nder an interference claim the Plaintiff only need show he was entitled to the leave and the Defendants' conduct interfered with that entitlement." (citing 657 F.3d at 781). Additionally, Wright points to Ninth Circuit law that states "[t]he employer's good faith or lack of knowledge that its conduct violated the Act is, as a general matter, pertinent only to the question of damages under the FMLA, not to liability." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001).

While Wright correctly points out that intent is irrelevant in an interference claim, whether an employer intended to interfere with an employee's FMLA rights is distinct from whether that employer had notice of the FMLA claim. As illustrated above, a prima facie case of interference requires that the plaintiff show the employer had sufficient notice of the employee's intent to take leave. Thus, an essential element of an interference claim is that an employer had reasonable notice of the FMLA request. Here, the facts in the record clearly show that the

11

commissioners did not know Wright requested FMLA leave until after the decision to terminate Wright was made.

Furthermore, as the district court noted, once the commissioners were made aware of Wright's request for FMLA leave, they accommodated it by extending Wright's date of termination until the end of February, when Wright's period of approved intermittent leave ended. Wright argues that he was entitled to additional FMLA leave beyond February 2013 because "there is no evidence in the record that Wright's need for FMLA leave would have ceased after thirty days" and Wright believes that he would have been re-certified for additional leave through the re-certification process. This argument fails because Wright's subjective belief that he would have been entitled to additional benefits, without more, is too speculative to support an interference claim. Without proof that he would have been entitled to a benefit, there can be no interference.

Based on the record on appeal, we are unable to conclude that Ada County interfered with Wright's FMLA leave. Consequently, we hold that the district court did not err in granting Ada County summary judgment on Wright's FMLA claim.

**C. The district court erred when it granted Ada County summary judgment on Wright's negligent infliction of emotional distress claim.**

Wright argues that the district court erred when it granted summary judgment on his negligent infliction of emotional distress claim on the grounds that Wright failed to establish a breach of a duty that would support such a claim. Ada County argues that even if Wright's Whistleblower claim survives, the negligent infliction of emotional distress claim must fail because the Whistleblower Act was not intended to prevent such harm. We address each in turn.

1. The Whistleblower Act established a duty for Ada County.

Negligent infliction of emotional distress requires a showing of (1) a legally recognized duty; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the breach; and (4) actual loss or damage. *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 152 Idaho 632, 642, 272 P.3d 1263, 1273 (2012). Additionally, the plaintiff must demonstrate physical manifestation of the alleged emotional injury. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 177, 804 P.2d 900, 906 (1991). An employer does not breach a legal duty to an at-will employee simply by terminating her without cause. *See Sorensen v. St. Alphonsus Reg'l Med. Ctr.*, 141 Idaho 754, 761–62, 118 P.3d 86, 93–94 (2005).

12

The district court held that there was no "evidence of a breach of duty owed by the defendants to their at-will employee, Mr. Wright. As noted at the beginning of the discussion, an employer may terminate an at-will employee for any reason or for no reason so long as the termination does not violate public policy or a statutory right." In essence, the district court concluded that because Ada County was entitled to summary judgment on the Whistleblower Act claim, Wright's termination did not violate public policy or a statutory right and therefore, Ada County did not breach a duty for terminating an at-will employee. However, as discussed above, the district court erred in granting summary judgment to Ada County on Wright's Whistleblower Act claim, which alleged a violation of a statutory right. Consequently, Idaho Code section 6-2104(2) created a duty for Ada County.

2. The Whistleblower Act does not preclude a cause of action for negligent infliction of emotional distress.

Ada County argues that the Whistleblower Act was not intended to prevent negligent infliction of emotional distress and therefore cannot be used to establish such a claim. We disagree. Idaho Code section 6-2105(2) provides that "[a]n employee who alleges a violation of this chapter may bring a civil action for appropriate *injunctive relief or actual damages*, or both. . . ." I.C. § 6-2105(2) (emphasis added). Idaho Code section 6-2105 then specifically defines "damages" as "damages for *injury or loss caused by each violation of this chapter. . . .*" I.C. § 6-2105(1) (emphasis added). Idaho Code section 6-2106 then lists the kinds of relief a court *may* order in rendering a judgment *under the chapter*. That section provides:

> A court, in rendering a judgment brought under this chapter, may order any or all of the following:
>
> (1) An injunction to restrain continued violation of the provisions of this act;
>
> (2) The reinstatement of the employee to the same position held before the adverse action, or to an equivalent position;
>
> (3) The reinstatement of full fringe benefits and seniority rights;
>
> (4) The compensation for lost wages, benefits and other remuneration;
>
> (5) The payment by the employer of reasonable costs and attorneys' fees;
>
> (6) An assessment of a civil fine of not more than five hundred dollars ($500), which shall be submitted to the state treasurer for deposit in the general fund.

13

I.C. § 6-2106. There is no limiting language that would indicate a plaintiff is precluded from bringing an independent cause of action for negligent infliction of emotional distress even though the alleged conduct would also constitute a violation of the Whistleblower Act. Ada County asserts that Idaho Code section 6-2106 limits the relief the court may award to the specific items enumerated. However, Idaho Code section 6-2106 lists the relief available for *judgments under the chapter*; it does nothing to limit the relief available under other, independent causes of action. Thus, Ada County's argument fails. We hold that a plaintiff may pursue a claim for negligent infliction of emotional distress even if the alleged conduct would also constitute a statutory violation pursuant to the Whistleblower Act. Consequently, the district court erred in granting summary judgment to Ada County on Wright's negligent infliction of emotional distress claim.

## D. We do not reach the issue of attorney fees.

Ada County argues that the district court abused its discretion when it denied Ada County attorney fees for the Whistleblower claim and the emotional distress claims. Because we are vacating the district court's order regarding Whistleblower claim and the emotional distress claim, we do not address the issue of attorney fees on those claims.

## E. We do not consider attorney fees on this appeal.

Wright argues that he is entitled to attorney fees under Idaho Code section 6-2105(1) and Idaho Code section 6-2106(5). Ada County asserts that it is entitled to attorney fees under Idaho Code sections 6-2107 and 12-117. However, because we are vacating the district court's decision and there is no prevailing party on appeal, we do not consider attorney fees at this time.

However, if Wright prevails on his Whistleblower Act claim on remand, then the district court may take into consideration Wright's reasonable costs and fees on this appeal in making its determination on fees.

## V. CONCLUSION

We affirm the district court's grant of summary judgment to Ada County on Wright's FMLA claim. We vacate the district court's grant of summary judgment to Ada County on Wright's Whistleblower Act claim and negligent infliction of emotional distress claim and remand to the district court for further proceedings. Costs to Wright.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**

14